## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LONG TERM CARE PARTNERS, LLC, a    :
Delaware limited liability company,    :    Civil Action No.:
   :
               Plaintiff,    :
   :
      v.    :
   :
ALORICA INC., a California corporation,    :
   :
             Defendant.    :
   :
   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## COMPLAINT

       Plaintiff Long Term Care Partners, LLC ("LTCP") alleges as follows for its Complaint against Defendant Alorica Inc. ("Alorica"):

## INTRODUCTION

       1.      Under a contract with the federal Office of Personnel Management, LTCP administers certain group insurance programs for current and former federal government employees and uniformed service members and their families.

       2.      LTCP subcontracted with Alorica for Alorica to provide customer service to enrollees in the federal group insurance programs.  Alorica is a billion-dollar company.  It operates call centers across the country.  It was and is an experienced federal government contractor and subcontractor.

       3.      In its subcontract with LTCP (titled "Services Agreement"), Alorica promised to: (a) comply with all applicable federal laws and regulations; (b) comply with federal government required subcontractor requirements attached to the Agreement or communicated later; and (c) indemnify LTCP for any losses sustained by reason of Alorica's failure to comply with

applicable laws and regulations or by reason of Alorica's negligent or wrongful acts or omissions.

4.      The Wage and Hour Division of the United States Department of Labor has informed LTCP that Alorica has, for years, failed to comply with federal laws and regulations and federal government subcontractor requirements with respect to the compensation of the Alorica employees who provided customer service for the federal group insurance programs. The Wage and Hour Division has informed LTCP that it intends to require Alorica and/or LTCP to pay millions of dollars to make up the amounts by which the affected employees were undercompensated.

5.      Alorica has not denied that Alorica's compensation of the Alorica employees in question failed to comply with federal requirements.  Alorica has nevertheless disavowed any financial responsibility for any of the amounts the Wage and Hour Division is seeking. According to Alorica, LTCP is at fault for not explaining Alorica's compensation obligations, even though those obligations were a matter of federal law and even though LTCP repeatedly sought and obtained assurances that Alorica was complying.

6.      Accordingly, LTCP files this action for breach of the Services Agreement, misrepresentation, unjust enrichment, for violation of the New Hampshire Consumer Protection Act, and for a declaration that the Services Agreement requires Alorica to pay or indemnify LTCP for any amounts required to be paid by the Wage and Hour Division.

## THE PARTIES

7.      Plaintiff Long Term Care Partners, LLC ("LTCP") is a Delaware limited liability company, with its principal place of business in Portsmouth, New Hampshire.  LTCP's sole member is John Hancock Life & Health Insurance Company, which is a Massachusetts corporation with its principal place of business in Massachusetts.

2

8.      Defendant Alorica Inc. ("Alorica") is a California corporation, with its principal place of business in the state of California.  Alorica is one of the largest customer experience companies in the United States.  It has operations around the United States and in at least ten other countries.  According to Alorica's website, it currently has approximately 100,000 employees globally.  Alorica is and throughout the relevant period was an experienced United States federal government contractor and subcontractor.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and because LTCP and Alorica are citizens of different states.

10.      This Court has personal jurisdiction over Alorica because Alorica transacts business in the State of New Hampshire.  This Court also has personal jurisdiction over Alorica because (a) this action is an action under the Services Agreement that is attached as Exhibit A to this Complaint and to which Alorica is a party; (b) Alorica agreed in Section 20 of the Services Agreement that "[n]o suit or action under or with respect to this Agreement shall be brought unless instituted and maintained in any state or federal court of competent jurisdiction in or for Rockingham County, State of New Hampshire," and (c) this Court is the federal court for Rockingham County, New Hampshire.

11.      Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(1), because Alorica (the only defendant) is deemed, pursuant to 28 U.S.C. § 1391(c)(2), to reside in this District.  Venue is also proper in this judicial district, pursuant to 28  U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to LTCP's claims occurred in this judicial district.

## FACTS

**The BENEFEDS Contract and the Services Agreement**

12.     In 2009, LTCP entered into a contract with the United States Office of Personnel Management (the "OPM"), an agency of the federal government, contract number OPM3517C0001 (the "BENEFEDS Contract").  The BENEFEDS Contract calls for LTCP to administer certain group insurance programs that the federal government makes available to federal government employees and uniformed services members and certain of their family members.

13.     In 2009, LTCP entered into a Services Agreement with Ryla Teleservices, Inc. a Georgia corporation ("Ryla").  The Services Agreement was amended by the parties four times between 2009 and 2020.  A copy of the Services Agreement (as amended) is attached as Exhibit A to this Complaint and is referred to in this Complaint as the "Services Agreement."

14.     In April 2010, Alorica became the successor by merger to Ryla Teleservices, Inc.

15.     In Amendment No. 2 to the Services Agreement, Section 1, the parties to the Services Agreement agreed that "[a]ll references to Ryla in the [Services] Agreement shall mean Alorica."

16.     The Services Agreement called for Alorica, referred to as "Vendor," to provide certain customer management services for the federal group insurance programs that LTCP was administering for the federal government, including services to support the BENEFEDS Contract.

**Ryla's and Alorica's Experience Performing Federal Government Contracts**

17.     Ryla was founded in 2001.  Its core business was operating call centers.

18.     In 2009, when LTCP and Ryla entered into the Services Agreement, Ryla was already an experienced federal government contractor and subcontractor.  For example, Ryla had performed call center services as a contractor for the United States Department of State and the United States Department of Veterans Affairs.  Ryla also provided call center services as a subcontractor for the United States Census Bureau in connection with the 2010 Census.

19.     Since Alorica acquired Ryla in 2010, Alorica has continued to provide services to the federal government as a contractor and subcontractor.

20.     By 2015 Alorica was a billion-dollar company with more than 45,000 employees. It described itself as one of the world's leading customer management services companies and specifically marketed its experience providing services in the government sector.

**Alorica's Obligations to Comply With Federal Law Under the Services Agreement**

21.     Section 9.E of the Services Agreement provided:  "Throughout the term of the Agreement, each party shall comply in full with all applicable federal, state and local laws and regulations with respect to the Services."

22.     Section 13 of the Services Agreement provided:  "Vendor agrees to indemnify LTCP and [certain related persons] (collectively the 'LTCP Indemnitees') against, and hold the LTCP Indemnitees harmless from, Losses that may be sustained by one or more LTCP Indemnitees by reason of: . . .  (v) any failure to comply with federal laws and regulations applicable to Vendor relating to the Services; . . .  or (vii) any negligent or wrongful act or omission of Vendor in connection with the performance of the Services, except to the extent a remedy is already provided by an Exhibit to this Agreement, provided that this indemnification shall not be applicable if such Losses are adjudged to have been caused solely by the Indemnitee's negligent act or omission."

23.     Section 15 of the Services Agreement provided:  "Vendor shall comply in full with the federal government required subcontractor requirements that are set forth in Exhibit F. In addition, Vendor shall comply in full with any additional requirements imposed by the federal government that are communicated to Alorica by or on behalf of LTCP and this Agreement shall automatically be amended to include all such requirements.  At the time of amendment mutually the parties will evaluate the impact of the additional requirements and cost associated."

24.     Exhibit F to the Services Agreement provided, in Section 20(a), that the employees engaged in the performance of the Services Agreement (with the exception of "executive, administrative and professional" employees as defined in Department of Labor regulations) were "service employees" within the meaning of the Service Contract Act.  The vast majority of the Alorica employees engaged in the performance of the Services Agreement were not executive, administrative or professional employees as defined in Department of Labor regulations.

25.     Exhibit F to the Services Agreement provided, in Section 20(b), that the Services Agreement was "subject to the following provisions and to all other applicable provisions of the [Service Contract] Act and regulations of the Secretary of Labor (29 CFR Part 4)" unless the Services Agreement was administratively exempted from the Service Contract Act by the Secretary of Labor or by statute or Department of Labor regulation.

26.     Exhibit F to the Services Agreement provided, in Section 20(c)(1), that each service employee employed in the performance of the contract "shall be paid not less than the minimum monetary wages and shall be furnished fringe benefits in accordance with the wages and fringe benefits determined by the Secretary of Labor, or authorized representative, as specified in any wage determination attached to this contract."

27.     Exhibit F to the Services Agreement provided, in Section 20(c)(3):  "If the term of this contract is more than 1 year, the minimum monetary wages and fringe benefits required to be paid or furnished there under to service employees under this contract shall be subject to adjustment after 1 year and not less often than every 2 years, under wage determinations issued by the Wage and Hour Division."

**The Service Contract Act and Executive Orders**

28.     The Service Contract Act ("SCA") (41 U.S.C. §§ 6701-6707) provides, in Section 6703, that an SCA-covered federal government contract must provide for "service employees" who work under the contract to receive wages and fringe benefits at or above prevailing rates, as established by the U.S. Department of Labor.

29.     In addition, the Department of Labor's regulations require that every SCA-covered contract, and every subcontract under an SCA-covered contract, contain as an attachment the applicable, currently effective wage determination specifying the minimum monetary wages and fringe benefits to be paid to service employees performing work on the contract.  29 C.F.R. §§ 4.1a(e), 4.4(a), 4.5(a).

30.     The Department of Labor issues wage determinations for every county in the United States on its website.

31.     The BENEFEDS Contract and the Services Agreement are subject to the Federal Acquisition Regulation (the "FAR").  The FAR provides:  "Contractors [which is defined to include subcontractors] performing on service contracts in excess of $2,500 to which no predecessor contractor's collective bargaining agreement applies shall pay their employees at least the wages and fringe benefits found by the Department of Labor to prevail in the locality or,

in the absence of a wage determination, the minimum wage set forth in the Fair Labor Standards Act." 48 C.F.R. §22.10002-2.

32.     The SCA provides that any "party responsible for a violation of a contract provision" requiring SCA wages is liable for any resulting underpayment.  41 U.S. C. §§ 6705(a).

33.     The SCA provides that a "subcontractor" can be liable for underpayment of employee compensation under an SCA-covered contract.  41 U.S. C. § 6705(b)(2).

**Application of the SCA to the Services Agreement**

34.     The OPM originally informed LTCP that the OPM did not consider the BENEFEDS Contract an SCA-covered contract.  Accordingly, the OPM did not provide LTCP with any SCA wage determinations, and no SCA wage determinations were attached to the Services Agreement.

35.     Notwithstanding the OPM's position, however, Exhibit F to the Services Agreement stated, in Section 20, that the Services Agreement was subject to the SCA.  The Services Agreement was never exempted from the Service Contract Act by the Secretary of Labor or by statute or Department of Labor regulation.

36.     In about April 2017, the OPM renewed the BENEFEDS Contract with LTCP and designated the renewed contract as contract number OPM3517C0002.

37.     In about November 2017, the OPM informed LTCP that the United States Department of Labor had confirmed that the BENEFEDS Contract was an SCA-covered contract and that the Department of Labor expected service employees performing work on the contract, including service employees of all subcontractors, to be compensated in compliance with SCA wage determinations.

38.     In November 2017, the OPM sent LTCP wage determinations for the locations where employees were performing work under the BENEFEDS Contract.

39.     The wage determinations that the OPM sent LTCP in November 2017 included: Wage Determination 2015-4543, Revision No. 5, for Dade County Florida; Wage Determination 2015-4571, Revision No. 3, for four other counties in Florida; Wage Determination 2015-5317, Revision No. 3, for seven counties in Oklahoma; and Wage Determination 2015-5331, Revision No. 5, for 13 other counties in Oklahoma.  These four wage determinations are referred to in this Complaint as the "2017 Wage Determinations."

40.     The 2017 Wage Determinations included (among others) the following minimum hourly wage rates for the following positions:

| Wage Determination | Job Title | Hourly Wage Rate |
|---|---|---|
| 2015-4543, Revision No. 5, for Dade County Florida | Customer Service Representative I | 11.62 |
| | Customer Service Representative II | 13.08 |
| | General Clerk I | 12.62 |
| | | |
| 2015-4571, Revision No. 3, for Florida Counties of Hernando, Hillsborough, Pasco and Pinellas | Customer Service Representative I | 11.60 |
| | Customer Service Representative II | 13.04 |
| | General Clerk I | 12.58 |
| | | |
| 2015-5317, Revision No. 3, for Oklahoma Counties of Creek, Okmulgee, Osage, Pawnee, Rogers, Tulsa and Wagoner | Customer Service Representative I | 11.83 |
| | Customer Service Representative II | 13.30 |
| | General Clerk I | 11.79 |
| | | |
| 2015-5331, Revision No. 5, for 13 Specifically Named Oklahoma Counties | Customer Service Representative I | 10.55 |

|  | Customer Service Representative II | 11.86 |
|  | General Clerk I | 13.10 |

41.     In addition, all four of the 2017 Wage Determinations required either provision of "Health & Welfare" benefits with a specified value or payment of additional hourly pay in lieu of those benefits.  The specified value of the required Health & Welfare benefits or pay in lieu of those benefits was $4.41 per hour or $176.40 per week or $764.40 per month, unless an employee was provided paid sick leave pursuant to Executive Order 13706, in which case the specified value was $4.13 per hour or $165.20 per week or $715.87 per month.

42.     Alorica employees were performing services under the Service Agreement in at least one county covered by each of the 2017 Wage Determinations.

**LTCP Obtains Alorica's Assurance That Alorica Is Complying With The 2017 Wage Determinations**

43.     On March 15, 2018, Kevin Hill, Brian Frankenfield, Jeff Lane and Jolanda Fannin of LTCP met in Cutler Bay, Florida with Kari Iaciofano and Andrew Eberhardt of Alorica to discuss Alorica's work under the Services Agreement.

44.     As of March 2018, Iaciofano's title at Alorica was Vice President of Client Solutions, and she was the person at Alorica with whom LTCP negotiated regarding its substantial volume of business with Alorica.

45.     As of March 2018, Eberhardt's title at Alorica was Senior Director of Client Solutions.

46.     In advance of the March 15, 2018 meeting, LTCP prepared and shared with Alorica a written agenda for the meeting.  One of the items on the written agenda was "SCA rates."  It was important to LTCP to confirm Alorica's compliance with the SCA now that it was

clear that the Department of Labor expected Alorica employees working under the Services

Agreement to be paid in accordance with the SCA (including both minimum hourly pay and

fringe benefits requirements).

47.     At the March 15, 2018 meeting, Frankenfield and Hill of LTCP told Iaciofano and

Eberhardt of Alorica that the Department of Labor had determined that the SCA required that

Alorica service employees who were performing services pursuant to the Services Agreement be

paid in compliance with SCA wage determinations, and that the OPM had provided LTCP with

the applicable wage determinations.

48.     At the March 15, 2018 meeting, Frankenfield and Hill of LTCP:  (a) gave

Iaciofano of Alorica a hard copy of the 2017 Wage Determinations; and (b) asked Alorica to

confirm whether Alorica employees performing work under the Services Agreement were being

compensated at or above the levels required in the 2017 Wage Determinations.

49.     At the March 15, 2018 meeting, Iaciofano and Eberhardt of Alorica took and

looked at the 2017 Wage Determinations and discussed with Frankenfield and Hill the locations

to which they applied, and Iaciofano told Frankenfield and Hill that she would make sure Alorica

was complying with them.

50.     After the March 15, 2018 meeting, Alorica assured LTCP that Alorica was

complying with the 2017 Wage Determinations.

51.     Specifically, on March 21, 2018, at 4:01 p.m., Iaciofano sent Frankenfield an

email with the subject line:  "SCA Wage Determination."  The email stated:  "Per our meeting

last week, Alorica complies with all state regulatory agencies with respect to wage

determinations and benefits provided.  Alorica's wages are commensurate with the markets in

which we are located in and generally exceed minimum wages for the markets which we conduct

business in.  Please let us know if that is sufficient or if you need additional details."

52.     On March 21, 2018, at 4:23 p.m., Eberhardt emailed LTCP, with a copy to

Iaciofano, an update on outstanding items from the March 15, 2018 meeting.  In the email

Eberhardt wrote:  "Kari sent you the Wage Determination email separately."

53.     On March 22, 2018 at 9:57 a.m., Jolanda Fannin of LTCP (who was not copied on

Iaciofano or Eberhardt's emails the prior evening) emailed Iaciofano and Eberhardt a list of

action items from the March 15, 2018 meeting.  The list included an "Action Item" assigned to

Alorica that read as follows:  "Email on wage determination for LTCP that states that there is a

process in place to review and update compliance."

54.     LTCP accepted as true Alorica's assurances that it was already in compliance

with the 2017 Wage Determinations and understood that, as of March 2018, Alorica was in fact

compensating the Alorica employees who were performing services under the Services

Agreement in compliance with the 2017 Wage Determinations and SCA requirements.

55.     Based on Alorica's assurances, LTCP told the OPM, in discussions about the

terms of a post-award modification of  the BENEFEDS Contract, that the employees performing

services under the BENEFEDS Contract were being compensated in compliance with the 2017

Wage Determinations.  If LTCP had known that Alorica's employees were not being

compensated in compliance with the 2017 Wage Determinations, LTCP could have requested

and likely would have obtained a post-award modification on more favorable financial terms.

56.     Given that Iaciofano was a Vice President of Alorica and frequently spoke for

Alorica in negotiations with LTCP, it was reasonable for LTCP to rely on her assurances.

**LTCP Obtains Alorica's Assurance That Alorica Is Complying With Additional Wage Determinations**

57.      In February 2021, the OPM informed LTCP that the OPM would require LTCP to amend the BENEFEDS Contract to retroactively incorporate wage determinations. The OPM sent LTCP a list identifying the specific wage determination for each location where employees were performing work under the BENEFEDS Contract for each of calendar years 2017, 2018, 2019, 2020 and 2021.  The list included the 2017 Wage Determinations.

58.      On March 2, 2021, Steve Hutcheon of LTCP emailed Joan Diaz-Narvaez, Senior Director of Client Solutions at Alorica that LTCP had just received a BENEFEDS contract modification from the OPM with updated SCA Wage Determinations for the year 2021. Hutcheon listed the updated 2021 wage determinations by number and by state at the bottom of the email.  He also attached the full text of each updated 2021 wage determination to the email. On March 4, 2021, Hutcheon asked Diaz-Narvaez to confirm that she had received his March 2, 2021 email and Diaz-Narvaez so confirmed.

59.      On March 29, 2021, Hutcheon emailed Diaz-Narvaez that the OPM was requiring amendment of the BENEFEDS Contract to incorporate a wage determination for each location where Alorica employees performed services under the Services Agreement for each of calendar years 2020 and 2021.  Hutcheon attached to his email a spreadsheet identifying, for each Alorica location, the applicable 2020 and 2021 Wage Determination, the date range to which it applied and the total hourly pay (including pay in lieu of fringe benefits) required for each year for each of three job classifications.  The wage determinations that LTCP emailed Alorica about on March 29, 2021 are referred to in this Complaint as the "2020 and 2021 Wage Determinations."

60.     In the March 29, 2021 email, Hutcheon asked Diaz-Narvaez to confirm that Alorica's compensation of employees working under the Services Agreement complied with the 2020 and 2021 Wage Determinations.

61.     On April 23, 2021, Diaz-Narvaez sent Hutcheon a reply email that reads in relevant part:  "Taking into account wages and incentives, our analysis shows that we are in compliance with the wage requirements.  Alorica will continue to monitor and make any necessary adjustments as needed.  In regards to the H&W [i.e., the fringe benefits requirement], based on the average tenure of the employees, we feel also confident that our plan satisfies the requirements."

62.     Diaz-Narvaez's April 23, 2021 confirmation was similar to the assurances Iaciofano had provided LTCP on March 21, 2018.  LTCP had no reason to doubt Diaz-Narvaez's confirmation.

63.     On May 20, 2021, Hutcheon emailed Diaz-Narvaez that the OPM was also requiring amendment of the BENEFEDS Contract to incorporate wage determinations for each Alorica location for 2017, 2018 and 2019.  In his email, Hutcheon again identified the specific wage determinations for each period of time and attached a spreadsheet showing the pay and fringe benefits supplement required for each Alorica location and asked Alorica to confirm compliance.  The wage determinations that LTCP emailed Alorica about on May 20, 2021 are referred to in this Complaint as the "2017 to 2019 Wage Determinations."

64.     LTCP already understood, based on Iaciofano's March 21, 2018 assurances, that Alorica was complying with the 2017 Wage Determination, but it nevertheless asked Alorica about all of the wage determinations that the OPM had identified for LTCP.

65.     In an email exchange on June 3 and June 4, 2021, Eric Silvin, Director of

Compensation at Alorica, emailed Hutcheon, with a copy to Diaz-Narvaez and two other Alorica

employees, that Alorica would need more time to respond to LTCP's request to confirm

compliance with the 2017 to 2019 Wage Determinations.  But Silvin again confirmed to

Hutcheon, in the same email exchange, that Alorica was in compliance with the 2020 and 2021

Wage Determinations.

**LTCP Increases Alorica's Rates Based On Its Belief That Alorica Was Complying With Applicable Wage Determinations**

66.     In about May 2021, LTCP and Alorica began discussing LTCP paying Alorica

higher rates under the Services Agreement in recognition of the increased compensation that

Alorica was required to pay Alorica employees under applicable wage determinations.

67.     In or about July 2021, LTCP sent Alorica a proposed amendment to the Services

Agreement reflecting LTCP's proposed rate increases.

68.     On September 1, 2021, even though no agreement had been reached, LTCP began

paying Alorica higher rates under the Services Agreement.

69.     On October 5, 2021, Alorica rejected LTCP's proposed amendment to the

Services Agreement and proposed instead an amendment that would have allowed Alorica to

terminate the Services Agreement effective immediately in a broad range of circumstances.

70.     Alorica's proposed amendment to the Services Agreement to permit immediate

termination suggested to LTCP that it could no longer rely on Alorica as a subcontractor.

Accordingly, in December 2021, LTCP notified Alorica that it was terminating the Services

Agreement effective March 31, 2022.

**The Wage and Hour Division Finds That Alorica Has Been Undercompensating Alorica's Employees**

71.     The Wage and Hour Division of the Department of Labor investigated whether the Alorica employees who worked under the Services Agreement were being compensated in compliance with federal law, including the SCA.

72.     The Wage and Hour Division has informed LTCP that it believes Alorica undercompensated the Alorica employees who worked under the Services Agreement by millions of dollars during 2017 through 2021—both before and after Alorica assured LTCP that it was compensating the employees in compliance with SCA requirements.  The Wage and Hour Division has informed LTCP that it intends to require Alorica and/or LTCP to pay the shortfall the Wage and Hour Division has identified.

73.     Alorica has informed LTCP that Alorica will not pay any portion of the shortfall that the Wage and Hour Division has identified.  Indeed, Alorica has demanded that LTCP indemnify Alorica for all amounts associated with the Wage and Hour Division's investigation.

**FIRST CAUSE OF ACTION**
**Breach of Contractual Duty to Properly Compensate Employees**

74.     LTCP repeats and realleges all of the preceding paragraphs of this Complaint as if fully set forth herein.

75.     The Services Agreement was a valid and enforceable contract between LTCP and Alorica.

76.     LTCP fully performed its obligations under the Services Agreement.

77.     Under the Services Agreement, Alorica had a contractual obligation to compensate the Alorica employees who worked under the Services Agreement in accordance with applicable federal law, including without limitation the following requirements (referred to

below for convenience as the "Federal Compensation Requirements"):  the Service Contract Act;

the Department of Labor's regulations implementing the Service Contract Act; the FAR

provisions implementing the Service Contract Act; and the Department of Labor's Service

Contract Act wage determinations for the locations of the Alorica employees in question.

78.     Alorica's obligation to compensate the Alorica employees who worked under the

Services Agreement in accordance with federal law, including without limitation the Federal

Compensation Requirements, was a material term of the Services Agreement.

79.     LTCP is informed and believes and on that basis alleges that for some or all of the

period beginning on March 16, 2017, Alorica failed to compensate the Alorica employees who

worked under the Services Agreement in accordance with the Federal Compensation

Requirements, including by paying monetary wages that were below applicable prevailing wage

rates and by failing to provide required fringe benefits or their cash equivalent.  By these failures,

Alorica materially breached the Services Agreement.

80.     As a direct and proximate result of Alorica's material breach of the Services

Agreement, the Wage and Hour Division has:  conducted a formal investigation of the

compensation of the Alorica employees who have been performing work under the Services

Agreement; determined that Alorica undercompensated those employees by, in the aggregate,

millions of dollars; and told LTCP that, given Alorica's refusal to pay any of the shortfall, it

intends to recover the amount of the under-compensation from LTCP.

81.     In addition, as a direct and proximate result of Alorica's breach of the Services

Agreement, LTCP is exposed to liability under the federal laws that govern the compensation of

employees who perform work on federal government contracts, and is exposed to contractual

liability under LTCP's own BENEFEDS Contract.

82.     As a direct and proximate result of Alorica's breach of the Services Agreement, LTCP has suffered and will continue to suffer damages, including but not limited to substantial legal exposure to the federal government and attorneys' fees.

**SECOND CAUSE OF ACTION**
**Misrepresentation**

83.     LTCP repeats and realleges all of the preceding paragraphs of this Complaint as if fully set forth herein.

84.     On March 21, 2018, Alorica told LTCP that Alorica was compensating the Alorica employees who worked on the Services Agreement in accordance with the SCA at or above levels set forth in the 2017 Wage Determinations.

85.     On April 23, 2021, Alorica told LTCP that Alorica was compensating the Alorica employees who worked on the Services Agreement at or above levels set forth in the 2020 and 2021 Wage Determinations.

86.     On June 4, 2021, Alorica again told LTCP that Alorica was compensating the Alorica employees who worked on the Services Agreement at or above levels set forth in the 2020 and 2021 Wage Determinations.

87.     Each of the statements by Alorica described in the immediately preceding three paragraphs (the "Alorica Assurances") was an untrue statement of material fact.

88.     Alorica knew or should have known that each of the Alorica Assurances was untrue.

89.     LTCP reasonably relied on each of the Alorica Assurances, including in discussions with the OPM about a post-award modification of the BENEFEDS Contract.  Alorica knew what compensation it provided to the Alorica employees who worked under the Services

Agreement.  LTCP did not know, or have access to information showing, what compensation Alorica provided to the Alorica employees who worked under the Services Agreement.

90.     As a direct and proximate result of its reliance on the Alorica Assurances, LTCP has suffered and will continue to suffer damages, including but not limited to loss of the opportunity for additional compensation from the OPM under the BENEFEDS Contract, substantial legal exposure to the federal government and attorneys' fees.

**THIRD CAUSE OF ACTION**
**Breach of Contractual Duty To Indemnify**

91.     LTCP repeats and realleges all of the preceding paragraphs of this Complaint as if fully set forth herein.

92.     Alorica's failure to compensate the Alorica employees who worked under the Services Agreement in accordance with the Federal Compensation Requirements, as described above, was a series of negligent and wrongful acts and omissions by Alorica in connection with the performance of its services under the Services Agreement, and no remedy is provided by any exhibit to the Services Agreement.

93.     Alorica's statements to LTCP about Alorica's compensation of the Alorica employees who worked under the Services Agreement, as described above, were negligent and wrongful acts and omissions by Alorica in connection with the performance of its services under the Services Agreement, and no remedy is provided by any exhibit to the Services Agreement.

94.     LTCP has sustained and will continue to sustain Losses (as defined in the Services Agreement) by reason of Alorica's negligent and wrongful acts and omissions, as described above, including Alorica's failure to compensate the Alorica employees who worked under the Services Agreement in accordance with the Federal Compensation Requirements and

Alorica's statements to LTCP about Alorica's compensation of the Alorica employees who worked under the Services Agreement.

95.    Alorica is required per Section 13, subsection (vii) of the Services Agreement to indemnify LTCP against and hold it harmless from the Losses it has suffered and will suffer.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**

96.    LTCP repeats and realleges all of the preceding paragraphs of this Complaint as if fully set forth herein.

97.    On September 1, 2021, LTCP began paying Alorica for its services under the Services Agreement at rates that were higher than the rates called for under the Services Agreement.

98.    LTCP told Alorica that it was paying the higher rates in recognition of the increased compensation that Alorica was required to pay Alorica employees who worked on the Services Agreement in order to comply with applicable wage determinations.

99.    Alorica accepted the additional money but did not compensate the Alorica employees who worked on the Services Agreement at the rates required by applicable wage determinations.

100.    Under these circumstances, it would be unconscionable for Alorica to retain the additional money it received from LTCP after September 1, 2021 for the Alorica employees who worked under the Services Agreement.

**FIFTH CAUSE OF ACTION**
**Violation of The New Hampshire Consumer Protection Act (RSA 358-A)**

101.    LTCP repeats and realleges all of the preceding paragraphs of this Complaint as if fully set forth herein.

102.    On March 15, 2018, LTCP asked Alorica if it was complying with the 2017 Wage Determinations; Alorica responded that it would investigate and ensure it was in compliance. Six days later, on March 21, 2018, Alorica emailed LTCP that "[p]er our meeting last week, Alorica complies with all state regulatory agencies with respect to wage determinations and benefits provided." Alorica's response was deceptive, as Alorica never complied with the 2017 Wage Determinations.

103.    On March 29, 2021, LTCP asked Alorica to confirm that Alorica's compensation of employees working under the Services Agreement complied with the 2020 and 2021 Wage Determinations. Alorica responded by email that Alorica was "in compliance with the wage requirements." Alorica's response was deceptive, as Alorica never complied with the 2020 and 2021 Wage Determinations.

104.    On June 4, 2021, Alorica again emailed LTCP that it was in compliance with the 2020 and 2021 Wage Determinations. Alorica's email was deceptive, as Alorica never complied with the 2020 and 2021 Wage Determinations.

105.    By deceptively answering LTCP's questions, or by actively concealing that Alorica was not in compliance with the 2017, 2020 and 2021 Wage Determinations, Alorica engaged in deceptive business practices prohibited by the New Hampshire Consumer Protection Act (NHCPA).

106.    Alorica's deceptive statements were made to and received by LTCP employees in New Hampshire.

107.    Alorica knew that these statements were untrue and it intended them to deceive LTCP. Accordingly, Alorica's deceptive conduct was knowing and willful.

108.   LTCP sustained damages as a result of Alorica's unlawful acts.  LTCP is entitled

to damages and other relief, including but not limited as much as 3 times but not less than 2

times its actual damages, its costs of suit and its reasonable attorney's fees.

## SIXTH CAUSE OF ACTION
### Declaratory Judgment (28 U.S.C. § 2201(a))

109.   LTCP repeats and realleges all of the preceding paragraphs of this Complaint as if

fully set forth herein.

110.   There is an actual controversy between LTCP and Alorica regarding their

respective rights and obligations under the Services Agreement in that:  (a) Alorica has denied

that it had an obligation to compensate the Alorica employees who worked under the Services

Agreement in accordance with the Federal Compensation Requirements; (b) Alorica has denied

that it has an obligation to indemnify LTCP for any Losses LTCP has sustained or may sustain

by reason of Alorica's failure to compensate the Alorica employees who worked on the Services

Agreement in compliance with the Federal Compensation Requirements or by reason of

Alorica's statements to LTCP about Alorica's compensation of the Alorica employees who

worked under the Services Agreement; and (c) Alorica has asserted that LTCP has a contractual

obligation to Alorica under the Services Agreement to indemnify Alorica for any amounts

Alorica is required to pay as a result of Alorica's failure to compensate the Alorica employees

who worked on the Services Agreement in compliance with the Federal Compensation

Requirements, while LTCP denies any such obligation.

## REQUESTS FOR RELIEF

WHEREFORE, LTCP respectfully requests that this Court:

A.   enter judgment against Alorica and in favor of LTCP for damages and 3 times

actual damages, with the amount to be determined in the course of the litigation or at trial;

B.      enter a declaratory judgment pursuant to 28 U.S.C. § 2201, that (i) Alorica had an obligation to compensate the Alorica employees who worked under the Services Agreement in accordance with the Federal Compensation Requirements; (ii) Alorica has an obligation to indemnify LTCP for any Losses LTCP has sustained or may sustain by reason of Alorica's failure to compensate the Alorica employees who worked on the Services Agreement in compliance with the Federal Compensation Requirements; (iii) Alorica has an obligation to indemnify LTCP for any Losses LTCP has sustained or may sustain by reason of Alorica's statements to LTCP about Alorica's compensation of the Alorica employees who worked under the Services Agreement; (iv) Alorica has an obligation to repay the amount of the increased payments it received from LTCP after September 1, 2021 for the Alorica employees who worked under the Services Agreement; and (v) LTCP has no obligation to Alorica under the Services Agreement to indemnify Alorica for any amounts Alorica is required to pay as a result of Alorica's failure to compensate the Alorica employees who worked on the Services Agreement in compliance with the Federal Compensation Requirements;

C.      award any and all further relief in favor of LTCP that is necessary and proper based upon the Court's declaratory judgment pursuant to 28 U.S.C. § 2201;

D.      award LTCP any and all legal fees and expenses reasonably incurred by LTCP in this lawsuit;

E.      award LTCP pre- and post-judgment interest on all damages; and

F.      award such other and further relief in favor of LTCP as this Court deems proper.

## JURY DEMAND

LTCP hereby demands a jury trial on all claims so triable.

Dated: October 7, 2022                    Respectfully submitted,

                                          LONG TERM CARE PARTNERS, LLC

                                          By its Attorneys

                                          */s/ Patrick A. Landroche*
                                          Patrick J. Bannon *(pro hac vice motion to be filed)*
                                          pbannon@seyfarth.com
                                          Patrick Landroche (NH Bar No. 272964)
                                          plandroche@seyfarth.com
                                          SEYFARTH SHAW LLP
                                          Two Seaport Lane, Suite 1200
                                          Boston, MA 02210-2028
                                          TEL: 617-946-4800
                                          FAX: 617-946-4801